UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:17-CV-00156-TBR

AUSTIN WILLIAMS, *et. al.*,                                                            PLAINTIFFS

v.

WILLIAM TERRY JAMISON,                                                                 DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Austin Williams, as administrator of the estate of Mark Williams, and Anthony Williams bring this action against Defendant William Terry Jamison alleging wrongful death and intentional interference with a business expectancy. [DN 1.] Plaintiffs have filed a motion to stay this civil action pending the final resolution of Defendant's related criminal case. [DN 11.] Defendant responded in opposition, [DN 14], and Plaintiffs replied, [DN 17.] Fully briefed, this matter is now ripe for adjudication. For the reasons explained in detail below, Plaintiffs' motion to stay is **GRANTED**.

BACKGROUND

Defendant William Jamison shot and killed Mark Williams on October 1, 2016. [DN 11 at 1.] Following a four-day jury trial from August 14 to 17, 2017 in Fulton County Circuit Court, Jamison was convicted of murder without the justification of self-defense and sentenced to twenty years in prison. [*Id.*] Jamison appealed his sentence and conviction to the Kentucky Supreme Court on November 8, 2017. [*Id.* at 2.] Jamison filed his appeal brief on February 9, 2018, and the Commonwealth of Kentucky has moved for an extension which would make its brief due June 6, 2018. [DN 11 at 2; DN 17 at 3.] Jamison will then have an opportunity to file a reply brief, and he has also requested oral argument. [DN 17 at 3.]

The Plaintiffs in this civil action are Austin Williams, Mark Williams's adult son and the administrator of his estate, and Anthony Williams, Mark Williams's brother. [*Id.* at 1.] Plaintiffs assert wrongful death and intentional interference with business expectancy claims against Jamison. Now, Plaintiffs move to stay discovery and the case in its entirety pending the resolution of Jamison's criminal appeal. [DN 11.]

As grounds, Plaintiffs cite complications they have encountered with obtaining records from the criminal case from the Kentucky State Police (KSP). [DN 11 at 3–5.] Specifically, on February 20, 2018, Plaintiffs' counsel sent an Open Records Request letter to KSP requesting copies of several categories of evidence used in Jamison's criminal case, including photographs, forensic examiners' reports and credentials, body camera footage, and 911 recordings. [DN 11-1 at 1–2 (Plaintiffs' Letter to KSP).] In response, KSP explained that, due to the ongoing status of Jamison's appeal, the case is not yet "closed" under KSP policy and therefore KSP denied Plaintiffs' request for a copy of its investigative file. [DN 11-2 at 1 (KSP's Response Letter).] Counsel for KSP later "offered overtures that agreements from KSP investigators, the Commonwealth Attorney, or court orders could be additional considerations in their evaluation of the production of information, as well as an observation of asking this Court to stay the civil action pending the criminal proceeding." [DN 11 at 4.]

Plaintiffs acknowledge that they have options for challenging KSP's denial of their Open Records Request, including "appealing to the Kentucky Attorney General from the KSP denial, or if that decision were adverse, appealing to the appropriate Circuit Court," which "are options when information is denied by a state agency." [*Id.*] Apparently, "before they "contacted [KSP] about information, the Commonwealth Attorney had advised plaintiffs' counsel that he did not have an objection if the civil action proceeded." [*Id.*]

Plaintiffs also contacted the Kentucky Medical Examiner's Office (MEO), which performed the autopsy on Mark Williams. [*Id.*] Unlike KSP, the MEO "responded that upon payment for copies, certain records would be provided." [*Id.* at 4–5.] Plaintiffs again contacted KSP to notify them that the MEO would provide the relevant records, but KSP advised that its position had not changed because MEO is its own separate agency. [*Id.* at 5.]

Ultimately, Plaintiffs' counsel states that it can obtain the records from the MEO and can also obtain certain court records from the Fulton County Circuit Court trial. [*Id.*] However, Plaintiffs argue that "without access to additional information from KSP, plaintiffs' counsel will be limited in compliance with the Scheduling Order (DN 8), and preparation of this case." [*Id.*]

In addition, Plaintiffs argue that, "[s]ince the criminal action is pending on appeal, the possibility of a retrial in Fulton Circuit Court remains." [*Id.* at 3.] "[O]n appeal, the defendant strongly argues that the Commonwealth should not have made repeated comments about his silence after Miranda warnings were initially provided to him at the scene. The defendant also argues regarding the propriety of the instructions and trial court rulings regarding restrictions on defense witnesses." [*Id.* at 7–8.] Accordingly, Plaintiffs argue that, if Jamison's conviction is reversed and his case is remanded for a new trial, a stay of this action would preserve the integrity of the evidence and "could allow the Kentucky Supreme Court to clarify or eliminate potential substantive issues in this case." [*Id.* at 8.]

DISCUSSION

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014)

(quoting *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.,* 565 F.2d 393, 396 (6th Cir. 1977)). The Sixth Circuit reviews this Court's decision of whether to stay a civil action for abuse of discretion. *Id.* at 627.

Though "nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment," *id.* (quoting *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007)), and "there is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings," *id.* (quoting *S.E.C. v. Novaferon Labs, Inc.*, No. 91–3102, 941 F.2d 1210, 1991 WL 158757, at *2 (6th Cir. Aug. 14, 1991)), district courts nonetheless "have 'broad discretion in determining whether to stay a civil action while a criminal action is pending or impending." *Id.* (quoting *Chao*, 498 F. Supp at 1037).

Courts generally consider six factors in determining whether to stay a civil action while a criminal action is pending:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Id.* (quoting *Chao,* 498 F. Supp at 1037). Additionally, courts "should consider 'the extent to which the defendant's fifth amendment rights are implicated.' " *Id.* (quoting *Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir. 1995)). "[T]he burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Id.* at 627–28 (quoting *Ohio Envtl. Council,* 565 F.2d at 396).

First, the Court must determine whether there is overlap between the issues in Jamison's criminal case and those in the instant civil case. *Id.* at 627. The parties do not dispute that the

basis of both the criminal case and the civil case is the death of Mark Williams. Because of the overlap in issues, this factor weighs in favor of granting a stay.

Second, the Court must consider the current status of the criminal case. "A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct" because "the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued" and "the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *Id.* at 628 (quoting *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

Here, however, Jamison was already convicted of murder in state court, sentenced to twenty years in prison, and is currently appealing that conviction to the Kentucky Supreme Court. Accordingly, the criminal action has proceeded well past the indictment stage. On appeal, Jamison argues that prosecutors made inappropriate comments regarding his decision to remain silent and that the trial court made erroneous rulings regarding witnesses and jury instructions. [DN 11 at 7–8.] If Jamison succeeds in these arguments, the likely result will be the reversal of his conviction and a remand for a new trial. According to Plaintiffs,

> [i]n the event of a retrial of the criminal case, interaction with witnesses in the civil case poses risks of interfering with the integrity of the evidence in the criminal action. No improper motive is ascribed to such contacts in the civil discovery proceedings, but witness contact and testimony through depositions or trial in the civil action would risk interference with the integrity of such evidence.

[*Id.* at 9.] Indeed, "[w]hen a party to a civil action is subject to criminal proceedings and/or investigations that relate to such civil action, courts will often stay the civil proceeding so as to prevent the use of civil discovery and evidentiary procedures to obtain evidence for use in the criminal matter." *McCullaugh v. Krendick*, No. 5:07CV2341, 2009 WL 2929306, at *1 (N.D.

Ohio Sept. 9, 2009) (quoting *Eastwood v. U.S.,* Case No. 2:06CV164, 2008 WL 5412857, at *1–2 (E.D. Tenn. Nov.14, 2008)). In the event of a retrial of Jamison's criminal case, it is possible that the discovery in this case, which will be broader than what is permitted in criminal discovery, could somehow be used against Jamison. On the other hand, whether or not a retrial will take place, and whether or not evidence from this civil case could be used against Jamison in the retrial, is speculative at this point. Overall, the Court finds that this factor does not weigh strongly one way or the other.

The third and fourth factors require the Court to consider the private interests and burdens faced by each party. With regard to the third factor, the main burden Plaintiffs allege is their "limited . . . access to complete law enforcement information" due to KSP's denial of Plaintiffs' request for the criminal investigative file. [DN 17 at 1.] They further argue that "even if more complete information was obtained from other sources, considering the KSP position, it does not follow that law enforcement and other KSP personnel would be accessible for discussions regarding their records." [*Id.* at 2.]

In response, Jamison argues that Plaintiffs do not face a significant prejudice because they "concede in their Motion that they have not fully exhausted their procedural options following the KSP's denial of certain records requested pursuant to the Kentucky Open Records Act." [DN 14 at 2.] Specifically, "Plaintiffs can appeal the KSP's denial of records to the Kentucky Attorney General; and if that decision is unfavorable, they can appeal to the appropriate Circuit Court." [*Id.*] Jamison further argues that "a vast amount of discovery is available to the Plaintiffs through other agencies and individuals; and the Plaintiffs have failed to demonstrate why this available discovery is insufficient for its case." [*Id.*] For example, "[t]he Commonwealth's Attorney who prosecuted the criminal case apparently told the Plaintiffs'

attorneys that 'he did not have an objection if the civil action proceeded.'" [*Id.*] Additionally, the MEO had no objection to providing information to Plaintiffs, nor does the Fulton Circuit Court Clerk. [*Id.*] Defendant's argument is well-taken, and he is correct that Plaintiffs can pursue other options for challenging KSP's denial of information. However, at this stage, it remains uncertain whether Plaintiffs will be successful in pursuing these other options and how long it will take to do so. Therefore, at this time, the fact that KSP has denied Plaintiffs several types of investigatory records weighs in favor of granting a stay.

As to the fourth factor, Jamison contends that he will be prejudiced by a stay because "the Defendant intends to take the deposition testimony of several individuals, some of whom are over 70 years of age. Of course, in addition to the passage of time, there is always the risk of illness or even death that would eliminate the Defendant's ability to preserve some testimony." [*Id.* at 3.] In response, Plaintiffs argue that "fading memories" are not a sufficient injury. [DN 17 at 3 (citing *Bunch v. Foley*, No. 1:15-CV-00114-GNS-HBB, 2015 WL 7871051, at *2 (W.D. Ky. Dec. 3, 2015) (quoting *Chao*, 498 F. Supp. 2d at 1040)).] However, this is only the case when a party alleges the risk of memory loss but "offers no specific examples." *Chao*, 498 F. Supp. 2d at 1040. Jamison does not offer explicit examples of particular witnesses he intends to depose in this case, but he does go further than simply mentioning the possibility of memory loss. Jamison asserts that he intends to depose several individuals, some of whom are over seventy years old, and the risk of memory loss, illness, or death could jeopardize the testimony of those individuals. [DN 14 at 3.] Though Jamison does not go into further detail, the Court nonetheless finds this to be a valid concern and therefore finds that the fourth factor weighs against granting a stay, though only somewhat.

The fifth factor, which looks to whether a stay would be in the interests of the Court, also weights slightly in favor of granting a stay. Generally speaking, it would not be an efficient use of Court resources to continue to require the parties to engage in discovery and to grant discovery extensions pending Plaintiffs' attempt to obtain the sought after records from KSP. Alternatively, granting a stay for the time being would allow Plaintiffs time to pursue those remedies and notify the Court if and when they are successful.

Sixth, though "[t]he public interest is furthered where individuals' injuries are remedied in a timely manner," it is also the case that "[p]rosecution and conviction of the guilty are fundamental public concerns." *Bunch*, 2015 WL 7871051, at *2 (quoting *Prudential Ins. Co. of Am. v. Blanton*, Case No. 3:14CV2343, 2015 WL 4668326, at *4 (N.D. Ohio Aug. 7, 2015)). Overall, this factor does not weigh strongly in either party's favor.

When weighed together, the factors do not weigh overwhelmingly in favor of either party; however, the Court finds that the balance tips slightly in Plaintiffs' favor. Due to the fact that Plaintiffs are currently unable to obtain certain discovery from KSP, the Court will grant Plaintiffs' motion to stay discovery and the civil action for the time being. However, as both parties acknowledge, Plaintiffs have alternative methods they can pursue to obtain the records KSP has refused to turn over, such as appealing to the Kentucky Attorney General and the appropriate Circuit Court. Accordingly, the Court directs Plaintiffs to pursue those remedies in order to reduce the length of the stay as much as possible. Additionally, the Court is sympathetic to Jamison's concerns about the health and memories of his prospective witnesses. Therefore, the Court advises Jamison that, going forward, it will entertain motions to partially lift the stay for the purpose of taking depositions of witnesses Jamison believes in good faith have illnesses or are at risk for memory loss.

CONCLUSION

For the reasons explained in detail above, Plaintiffs' motion to stay discovery and civil action, [DN 11], is **GRANTED** with the condition that Plaintiffs are directed to continue to pursue discovery from KSP through available remedies and notify the Court if and when they are successful. Additionally, the Court will entertain motions from Jamison to partially lift the stay under the circumstances explained above.

All deadlines are stayed. The telephonic conference set for 10/1/18, the final pretrial conference set for 2/1/19, and the jury trial set for 2/19/19 are vacated at this time.

A status conference is **SET** for **August 17, 2018 at 9:00 a.m. Central Time**. The Court will place the call to counsel.

**IT IS SO ORDERED**.

Date: June 19, 2018

cc: Counsel

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**