UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

A<small>USTIN</small> W<small>ILLIAMS</small>, <small>ET AL</small>.  P<small>LAINTIFFS</small>

v.  No. 5:17-cv-156-BJB

W<small>ILLIAM</small> T<small>ERRY</small> J<small>AMISON</small>  D<small>EFENDANT</small>

\* \* \* \* \*
M<small>EMORANDUM</small> O<small>PINION</small> & O<small>RDER</small>

The Jamison and Williams families "did not get along." *Jamison v. Commonwealth*, No. 2017-sc-622, 2019 WL 1172971, at \*1 (Ky. Feb. 14, 2019). Just a few weeks after Mark Williams "bumper chas[ed]" William Jamison on the highway at over 80 miles per hour, Jamison fatally shot Williams on a farm in Fulton County. *Id.* A Kentucky jury convicted Jamison of murder, and the Fulton Circuit Court sentenced him to 20 years in prison. *Id.*

Austin Williams (Mark's son and administrator) and Anthony Williams (Mark's brother and former business partner) then sued Jamison for wrongful death and intentional interference with a business expectancy. Complaint (DN 1-1). Jamison removed to federal court on the basis of diversity jurisdiction. DN 1. In his answer, Jamison asserts the affirmative defense of self-protection: he was "privileged to use deadly physical force to protect himself from death or serious physical injury at the hands of Mark Williams." Answer (DN 4) at 1. The Plaintiffs moved for partial summary judgment on that issue.

Did the state-court proceeding "conclusively establis[h]" that Jamison "intentionally killed Mark Williams and was not privileged to do so in self-protection"? Plaintiffs' Motion for Partial Summary Judgment (DN 48) at 1. The answer is yes. Because the doctrine of collateral estoppel treats Jamison's criminal conviction as a bar to Jamison relitigating the issue of self-defense, the Court grants Plaintiffs' motion.

I.  T<small>HE</small> U<small>NDERLYING</small> L<small>ITIGATION</small>

The Kentucky Supreme Court cast the tragic facts of this case in stark relief:

On October 1, 2016, Jamison shot and killed Williams when Williams drove up on a tract of farmland where Jamison was working in Fulton County, Kentucky. No one witnessed the shooting. Jamison called 911 and reported "a guy [had] come up to kill [him]." When local law

1

enforcement arrived, Jamison stated that "Mark Williams pulled in behind me, raised his hand with a piece of metal and said he was going to kill me. He's down here under his truck sir." After seeing Williams' body, Deputy Thomas read Jamison his *Miranda* rights and asked whether he would like to speak with officers. Jamison invoked his right to remain silent until he had spoken with an attorney. Deputy Thomas then handcuffed Jamison and took him to the Hickman Police Department.

*See Jamison*, 2019 WL 1172971, at *1. The state supreme court rejected all seven purported errors raised by Jamison on direct appeal, including one related to self-defense.[1] *Id.* And on collateral review, the Fulton Circuit Court denied his subsequent motion to vacate based on ineffective assistance of counsel. Notice of Status of Criminal Case (DN 44). According to the record in this case, Jamison's appeal of that ruling remains pending.

## II.    COLLATERAL ESTOPPEL

Offensive collateral estoppel may bar relitigation of an issue that "the defendant has previously litigated unsuccessfully in an action with another party." *Jackson v. Renfrow*, No. 1:13-cv-116, 2014 WL 1514320, at *2 (W.D. Ky. Apr. 16, 2014) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979)). If a state-court judgment is the basis for a preclusion motion, federal courts must give that judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). And under Kentucky law, collateral estoppel requires four elements:

(1) identity of issues;
(2) a final decision or judgment on the merits;
(3) a necessary issue with the estopped party given a full and fair opportunity to litigate;
(4) a prior losing litigant.

*Moore v. Commonwealth*, 954 S.W.2d 317, 319 (Ky. 1997) (citing *Sedley v. City of West Buechel*, 461 S.W.2d 556, 559 (Ky. 1970)).

Jamison contests only the third element: whether he had "a full and fair opportunity" to litigate the issue of self-protection. Response (DN 49) at 1. According to Kentucky law, Jamison must have had a "realistically full and fair opportunity" to litigate the issue, *Sedley*, 461 S.W.2d at 559, and application of issue preclusion must

---

[1] Of the seven claims of error Jamison made during the direct appeal of his conviction, he reasserts four of them in his argument that he did not have a full and fair opportunity to litigate. *See* Response (DN 49) at 4.

2

serve the principles of justice and fairness, *City of Covington v. Bd. of Trs. of the Policemen's & Firefighters' Ret. Fund*, 903 S.W.2d 517, 522 (Ky. 1995). This inquiry protects parties who might've (rationally) litigated an early case differently if it carried the severe consequences of the later dispute. *See Bd. of Educ. of Covington v. Gray*, 806 S.W.2d 400, 403 (Ky. Ct. App. 1991) (comparing financial consequences). Whether the procedures governing the prior proceeding were "formal" or "adversarial" factor into that determination. *Columbia Gas Transmission v. The Raven Co.*, No. 12-72, 2014 WL 2711943, at *6 (E.D. Ky. June 13, 2014); *see also Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001) ("informal procedures utilized in unemployment compensation proceedings" didn't provide full and fair opportunity); *Gray*, 806 S.W.2d at 403 (comparing the "quality and extensiveness" of the two proceedings). And the Kentucky Court of Appeals has asked whether "the amounts in controversy are 'markedly different'" and whether "the 'quality and extensiveness' of the two proceedings are not comparable." *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 28). Kentucky courts have also considered the defending party's participation in the initial proceeding and understanding of its potential consequences. *Chesley v. Abbott*, 524 S.W.3d 471, 486 (Ky. Ct. App. 2017).

Most of these factors are not in dispute, and their support for the Williams' invocation of collateral estoppel is not in doubt. The amount in controversy, quality and extensiveness of the proceedings, and the party's participation and understanding all indicate Jamison had every incentive to litigate his murder case fully—and in fact did so. Plainly, Jamison had every incentive to vigorously litigate the criminal murder case that preceded this civil suit, no matter how great his potential monetary exposure. Offensive collateral estoppel is commonly used to preclude the civil re-litigation of an issue already decided in a criminal case. *See Jackson*, 2014 WL 1514320 at *2 (citing *Westport Ins. Corp. v. Mudd*, No: 1:08-cv-34, 2010 WL 4638760, at *3 (W.D. Ky. Nov. 5, 2010)). In these circumstances, of course, the burden of proof is stricter in the original criminal case than in the follow-on civil dispute. *See May v. Oldfield*, 698 F. Supp. 124, 126–27 (E.D. Ky. 1988). And the Kentucky proceedings indicate Jamison participated accordingly: he testified, called witnesses, presented his case to a jury, and pursued appeals all the way to the Kentucky Supreme Court and on collateral review. Nothing suggests he didn't understand that he faced a 20-year sentence, admitted to killing Mark Williams, and rested his case on a claim of self-defense.

Instead, Jamison's argument turns on the quality, not the fact, of his previous trial. He complains that the trial court prevented him from offering and challenging witness testimony in support of his self-protection theory, the prosecutor misrepresented the self-protection burden of proof and violated his Fifth Amendment rights, and his lawyer was ineffective. Response at 4–10. Of these five arguments, four were previously raised to and rejected by the Kentucky Supreme Court. *See Jackson*, 2014 WL 1514320, at *1–*3. These findings would carry "the same

3

preclusive effect" in federal court as in the courts of the state where it was previously decided. *Migra*, 465 U.S. at 81.

Only the ineffectiveness argument hasn't been resolved by the Kentucky appellate courts. Notice of Appeal (DN 44-1). But the Kentucky trial court has already rejected the ineffective-assistance claim, and its decision precludes reconsideration by this Court. Notice of Status of Criminal Case (DN 44). And the pendency of an appeal does not estop the collateral-estoppel doctrine. *See May*, 698 F. Supp. at 127 (citing *Webb v. Voirol,* 773 F.2d 208, 211 (8th Cir. 1985)) ("[C]ourts have repeatedly held that the pendency of an appeal does not destroy the finality of a judgment for the purpose of applying the doctrine of collateral estoppel."); *cf. Sanchez v. City of Chicago*, 880 F.3d 349, 357 (7th Cir. 2018) (state court's determination, in post-conviction proceeding, that counsel wasn't ineffective had preclusive effect). This is true in both Kentucky and federal courts. *See Roberts v. Wilcox*, 805 S.W.2d 152, 153 (Ky. Ct. App. 1991); *May*, 698 F. Supp. at 127 (citing *Webb*, 773 F.2d at 211). As Plaintiffs correctly argue: "Jamison is asking this Court to decide his claim of ineffective assistance of counsel after the Fulton Circuit Court in which Jamison was convicted found it unmeritorious and before the Kentucky Court of Appeals has weighed in on appeal." Reply (DN 51) at 2. This Court cannot disturb that decision now, because "a final judgment retains its issue-preclusive effects pending decision of the appeal." *Isibor v. City of Franklin*, 149 F.3d 1183, 1998 WL 344078, at *5 (6th Cir. 1998).

Even if the Kentucky trial court *hadn't* already decided this issue against Jamison, no caselaw indicates that a pending ineffective-assistance claim shows a party previously lacked a full and fair opportunity to litigate. "If a direct appeal is no bar to collateral estoppel, it logically follows that a [collateral attack] is also not a bar to collateral estoppel." *SEC v. Durham*, No. 1:11-cv-370, 2017 WL 3581640, at *7 (S.D. Ind. Aug. 18, 2017). Instead, courts ask whether, in light of the record of proceedings, the party was "discourag[ed] or deterr[ed]" from fully litigating. *Carvalho v. Stevens*, No. 12-cv-128, 2013 WL 3742532, at *4–5 (S.D.N.Y. July 17, 2013). Because "[a]ll that is required is the full and fair *opportunity* to litigate the issue." *Lucien v. Roegner*, 574 F. Supp. 118, 121 (N.D. Ill. 1983).

Aside from ineffectiveness, Jamison asserts that two other problems afflicted the previous litigation: the trial court refused additional testimony on his state of mind and the prosecutor's closing misstated the burden of proof. Response at 4–7. Neither point is availing here. Jamison had the opportunity to present evidence on his state of mind; he "did eventually testify and discussed, at length, the incident involving Williams the week before," rendering other testimony "nothing but cumulative evidence." *Jamison*, 2019 WL 1172971 at *6. And the prosecutor's "extremely isolated" misstatement didn't undermine that opportunity. *Id.* at *3. In fact, "after the misstatement of the law," the trial judge "subsequently picked up the

correct instructions and re-read them to the jury on his own." *Id.* Nothing in this record suggests that Jamison was denied an opportunity to defend himself.

Accordingly, the Kentucky court's judgment is entitled to preclusive effect and Jamison's affirmative defense of self-protection is barred by the doctrine of collateral estoppel. No genuine issue of material fact prevents this Court from awarding partial summary judgment to the Plaintiffs on the issues of liability and self-defense. Even if, as Jamison argues, the first case was wrongly decided, collateral estoppel "prevent[s] relitigation of wrong decisions just as much as right ones." *Pogue v. Principal Life Ins. Comp.*, No. 3:14-cv-599, 2021 WL 3354605, at *7 (W.D. Ky. Aug. 2, 2021) (quoting *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 157 (2015)).

### III. STAY

Alternatively, Jamison asks the Court to continue to hold this case in abeyance pending the appeal of the state court's collateral-review ruling on ineffective assistance. "The power to stay proceedings" inheres in the district court's authority to "control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014) (quoting *Ohio Env't Council v. U.S. Dist. Ct. for S. Dist. of Ohio*, 565 F.2d 393, 396 (6th Cir. 1977)). Courts in this Circuit consider multiple factors in deciding whether to stay a case:

(1) the extent to which the issues in the criminal case overlap with those presented in the civil case;
(2) the status of the case, including whether the defendants have been indicted;
(3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay;
(4) the private interests of and burden on the defendants;
(5) the interests of the courts; and
(6) the public interest.

*Id.* at 627. The party supporting the stay has the burden "to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Id.* at 627–28 (quoting *Ohio Env't. Council*, 565 F.2d at 396). And "[t]he district court must" then "consider whether granting the stay will further the interest in economical use of judicial time and resources." *Id.* at 628 (quoting *Int'l Bhd. of Elec. Workers v. AT&T Network Systems,* No. 88-3895, 879 F.2d 864, 1989 WL 78212, at *8 (6th Cir. July 17, 1989)).

Should this court wait further still while the Kentucky Court of Appeals addresses Jamison's challenge to the Fulton Circuit Court's conclusion that ineffective assistance didn't invalidate his conviction? "A stay of a civil case is an extraordinary remedy that should be granted only when justice so requires." *Chao v.*

*Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007). This case has been stayed since 2018 because the Plaintiffs had difficulties obtaining discovery during the pendency of the criminal case. Stay Order (DN 18) at 8; *see generally* Plaintiffs' Motion to Stay (DN 11). Jamison now argues for a continued stay, without any attempt to explain what warrants further delay. Resp. at 3, 10. During that time Jamison has exhausted the state direct-appeal process and collaterally attacked his conviction in state court. Plaintiffs say this delay has already come at some cost to their ability to prove damages, and they acknowledge that the Court could vacate a summary-judgment order in their favor if the Kentucky Court of Appeals vacates Jamison's conviction. MPSJ at 6. Further, the "interests of judicial economy" weigh in favor of lifting the stay, given that the original reasons justifying the stay no longer obtain: by now the Plaintiffs have obtained discovery of previously inaccessible documents and Jamison has exhausted his direct appeals. *See May*, 698 F. Supp. at 127–28; Discovery Status Report (DN 19) at 2. So the Court will lift the stay in this case.

## IV.  COMPARATIVE FAULT

Jamison finally contends that "Plaintiffs' motion for partial summary judgment must be denied because the decedent's conduct is relevant to the issue of comparative fault, and the issue of comparative fault was not actually litigated in the criminal matter." Response at 10–11. Kentucky's comparative-fault statute, KRS § 411.182, "requires the trier of fact in '*all* tort actions' to 'consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed' when determining the percentage of the total fault properly attributed to the parties." *Sloan v. Drury Hotels Co.*, No. 5:15-cv-61, 2016 WL 4942031, at *2 (W.D. Ky. Sept. 15, 2016) (quoting KRS § 411.182(2)).

Jamison does not, however, provide any support for his argument that granting partial summary judgment would prevent him from arguing comparative fault. The issues are not identical. Self-defense, if proven, absolves a defendant from criminal and civil liability. KRS §§ 503.050, 503.085. Comparative fault, in contrast, applies only to civil actions and assigns damages in proportion to fault. KRS § 411.182. The party seeking an apportionment instruction "must show that a reasonable juror could conclude that apportionment of some liability to that [party] is justified." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 826–27 (6th Cir. 2000). And in a wrongful-death case, the fault of the decedent is relevant, provided the defendant makes a sufficient showing to submit the issue to the jury. *Id.* at 827–28 (jury form included decedents' faults); *cf. Hattori v. Peairs*, 662 So. 2d 509, 516 (La. Ct. App. 1995) (apportionment of fault is appropriate where "the plaintiff-victim initially provoked the difficulty in which he was injured").

To the Court's knowledge, no Kentucky court has examined the interaction between one jury's rejection of self-defense and another's consideration of a comparative-fault instruction. But as a matter of first principles, a liability finding doesn't obviously foreclose the possibility that another party is also partially at fault. Indeed, other courts have seen daylight between the two and allowed defendants to assert comparative fault after foreclosing self-defense. *E.g.*, *Cloud v. Hosack*, No. 6-153, 2006 WL 1876620, at *2 (D. Or. July 5, 2006) ("Although defendant had the opportunity to assert self-defense and defense of others in his criminal proceeding, the issue of comparative fault is dissimilar."); *Figaniak v. Fraternal Order of Owl's Home Nest*, No. 5:15-cv-111, 2017 WL 4767168, at *6 (N.D.W. Va. Oct. 20, 2017) ("[N]o error in permitting defendant Chandler to advance self-defense arguments solely to be considered by the jury in determining the reasonableness of defendant Chandler's actions in … apportioning liability."). As discussed above, collateral estoppel bars Jamison from relitigating the issue of self-defense, but other questions of fault or damages may yet remain available. To submit comparative fault to a jury, of course, Jamison would need to first "show that a reasonable juror could conclude that apportionment of some liability" to the decedent is justified. *Barnes*, 201 F.3d at 827.

## V. Tortious Interference

Finally, Jamison argues that summary judgment based on collateral estoppel is not appropriate for Plaintiffs' tortious-interference claim. Response at 11–12. But the Williamses didn't move for summary judgment on that claim and conceded that "additional factfinding is necessary" for that issue. MPSJ at 13. Accordingly, the Court has no occasion to address the tortious-interference claim at this time.

## ORDER

The Court grants Plaintiffs' motion for partial summary judgment (DN 48).

Benjamin Beaton, District Judge
United States District Court

July 13, 2022