UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**AUSTIN WILLIAMS, ET AL.**　　　　　　　　　　　　　　　　　　　　　　**PLAINTIFFS**

v.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**No. 5:17-cv-156-BJB**

**WILLIAM TERRY JAMISON**　　　　　　　　　　　　　　　　　　　　　　**DEFENDANT**

## MEMORANDUM OPINION & ORDER

　　A Fulton County jury convicted William Terry Jamison in 2017 of murdering Mark Williams. While that criminal case remained on appeal, Williams's estate and brother sued Jamison for wrongful death and intentional interference with a business relationship. On the wrongful-death claim, Jamison attempted to advance a defense that self-defense justified the killing. The Plaintiffs, however, moved for partial summary judgment on the ground that the murder conviction estopped him from taking a position inconsistent with the criminal jury's verdict. *See Williams v. Jamison*, No. 5:17-cv-156, 2022 WL 2717639 (W.D. Ky. July 13, 2022). The Court granted that motion: the jury's finding that Jamison intentionally killed Williams necessarily included a finding that the killing wasn't justified. *Id.* at *1.

　　Since then, however, the Kentucky courts threw out Jamison's murder conviction on the ground that his counsel was ineffective. *See* Motion to Vacate (DN 56) at 4–5 (describing procedural history). Because that conviction had supported the Court's earlier grant of partial summary judgment, in its absence the Court granted Jamison's unopposed motion to vacate the earlier estoppel ruling. DN 65.

　　Jamison subsequently entered an *Alford* plea to a reduced charge of second-degree manslaughter, however. *See* Guilty Plea (DN 67-1). Which returns us to the question of estoppel. True, this manslaughter offense implies less culpability by Jamison than the earlier murder conviction; indeed, Jamison has by now been released based on the time he already served. But anticipating the same response to their civil suit, the Plaintiffs have filed another partial summary-judgment motion (DN 69), again seeking to bar Jamison from arguing that self-defense precludes wrongful-death liability.

*

　　"Under Kentucky law, collateral estoppel requires four elements: (1) identity of issues; (2) a final decision or judgment on the merits; (3) a necessary issue with the estopped party given a full and fair opportunity to litigate; (4) a prior losing litigant." *Williams*, 2022 WL 2717639, at *1–2 (citing *Moore v. Commonwealth*, 954 S.W.2d

1

317, 319 (Ky. 1997)). Only the first part of the third element is at issue here; the parties don't dispute that self-defense (or, more precisely, the lack of justification for the killing) was identically at issue in the criminal and civil cases, that Jamison had a full and fair opportunity to litigate it post-appeal, that the criminal conviction is final, and that Jamison "lost" (or rather conceded) the issue in the earlier case.

As to whether a second-degree manslaughter conviction "necessar[ily]" includes a finding that the killing wasn't justified, the Plaintiffs are correct that it does.

Jamison entered an *Alford* plea to second-degree manslaughter. "An Alford plea is a 'plea of guilty,' regardless of any denial of underlying facts, and clearly constitutes a criminal conviction." *Northern-Allison v. Seymour*, No. 2022-ca-379, --- S.W.3d ---, 2024 WL 2982469, at *5 n.9 (Ky. Ct. App. June 14, 2024) (quoting *Pettiway v. Commonwealth*, 860 S.W.2d 766, 767 (Ky. 1993)). A "guilty plea," in turn, "may be used to establish issue preclusion in a subsequent civil suit." *Id.* at *7 (quoting 50 C.J.S. *Judgments* § 1193 (2024)). A defendant who's pled guilty has "admit[ted] and is estopped from relitigating the material facts alleged in the information or indictment, and a plaintiff is entitled to introduce pleas from criminal cases in subsequent civil cases to establish 'all matters of fact and law necessarily decided by the conviction.'" *In re ClassicStar Mare Lease Litigation*, 823 F. Supp. 2d 599, 622 (E.D. Ky. 2011) (quoting *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 569 (1951)).

The lack of justification is a material fact in both the criminal manslaughter prosecution and civil wrongful-death suit.

As to the criminal offense Jamison committed, a "person is guilty of manslaughter in the second degree when he or she wantonly causes the death of another person." K.R.S. § 507.040(1).[1] That means a defendant may be convicted of second-degree manslaughter when he "was wanton … in his belief that force was necessary for self-defense." *Gribbins v. Commonwealth*, 483 S.W.3d 370, 374 (Ky. 2016).[2] And Kentucky statutory law renders the self-defense justification

---

[1] Under Kentucky law, "[a] person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." K.R.S. § 501.020(3); *accord Wanton*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Unreasonably or maliciously risking harm while being utterly indifferent to the consequences. In criminal law, *wanton* usually connotes malice … while *reckless* does not.").

[2] Similarly, if a person is *reckless* in his belief that lethal force was necessary for self-defense, he may be guilty of "reckless homicide"—a separate and less-culpable offense from second-degree manslaughter, whose mens rea requires wantonness. *See Gribbins*, 483 S.W.3d at 374 ("[A] recklessly held belief" in the need for self-defense could "reduc[e]" a more culpable homicide charge "to reckless homicide."). *Compare* K.R.S. § 507.040(2) (classifying second-degree manslaughter as a Class C felony), *with* § 507.050(2) (classifying reckless homicide as a Class D felony).

"unavailable" to defendants who sincerely but wantonly believed that deadly force was necessary. K.R.S. § 503.120(1). A conviction for second-degree manslaughter thus "necessarily decide[s]" that the killing wasn't justified. *In re ClassicStar Mare Lease Litigation*, 823 F. Supp. 2d at 622. And it means that to the extent Jamison maintains he acted out of self-defense, he concedes that belief was at least wanton with respect to his actual need to protect himself.

As to the civil tort Jamison stands accused of, Kentucky's wrongful-death statute imposes liability on individuals whose "negligence or wrongful act" causes the death of another. K.R.S. § 411.130(1). In some circumstances, Jamison might be right that a violent act taken in self-defense wouldn't subject a defendant to liability if a jury determined the act was reasonable—that is, not "negligen[t] or wrongful." *Id.* The problem for Jamison is that he's already admitted that any act he took in self-defense was, at best, wanton with respect to its necessity—that is, it was not reasonable.

So Jamison's second-degree manslaughter conviction estops him from relitigating self-defense in this wrongful-death case. Because Kentucky law defines second-degree manslaughter to cover wanton (but not reasonable) self-defense, Jamison's admission establishes that his mental state was unreasonable (or worse). He cannot therefore turn around and argue to a civil jury that the shooting was reasonable and avoid liability on that basis—at least not without contradicting his earlier representations in the criminal case. Jamison's *Alford* plea conceded that his belief in the need for deadly force was wanton; otherwise the state court couldn't have accepted his plea that he "wantonly cause[d] the death of" Williams. K.R.S. § 507.040(1). That concession necessarily admitted that the killing was unjustified. *See* § 503.120(1) (barring self-defense arguments based on wantonness or recklessness). "Given the opportunity to choose between allowing a jury to decide his" self-defense theory in the criminal case, on the one hand, "or deciding the issue himself by pleading guilty," on the other, Jamison "chose the latter." *Northern-Allison*, 2024 WL 2982469, at *8. A wanton, unjustified killing "necessarily establishes" the "negligence or wrongful act" element in a civil wrongful-death suit: "As a logical matter, a [second-degree manslaughter] conviction entails a more culpable mental state … than required for wrongful death." *Stanley v. Smith*, No. 6:16-cv-264, 2019 WL 4786053, at *13 (E.D. Ky. Sept. 30, 2019).

* *

In response, Jamison argues that a "conviction for second-degree manslaughter is not mutually exclusive of self-defense" because he could have pled guilty based on an "imperfect self-defense" theory. Response (DN 70) at 3.

That brand of self-defense mens rea, however, isn't relevant to this civil suit or available to Jamison. An imperfect self-defense finding allows a jury to convict a defendant for a lesser offense and does *not* mean a use of force was justified. "Under imperfect self-defense, the defendant is not completely exonerated but instead a jury may convict a defendant for a lesser offense, one for which wantonness or recklessness

3

is the culpable mental state." *Wilson v. Commonwealth*, No. 2022-ca-208, 2023 WL 4375077, at *4 (Ky. Ct. App. July 7, 2023). As that definition explains, imperfect self-defense does not justify the use of force or exonerate the defendant. Rather, it's a mere procedural mechanism: one that allows the Commonwealth to align a defendant's mental state with the relevant homicide offense and achieve a conviction even without the proof of specific intent to kill that a murder conviction would require. *See* 40 C.J.S. *Homicide* § 114 (2024) ("Unlike the affirmative defense of self-defense, which is a justification for the crime and, if accepted, results in acquittal, a finding of imperfect self-defense results in conviction of the offense of voluntary manslaughter."); *Commonwealth v. Hager*, 41 S.W.3d 828, 843 (Ky. 2001) (explaining this concept). And in situations where the "defense" does apply, it would establish a defendant's mental state as sufficiently culpable to support liability for wrongful death. For example, a defendant charged with murder—an intentional killing—might argue that he acted only wantonly rather than with specific intent. That "imperfect self-defense" argument might entitle him to an instruction allowing the jury to consider the less culpable offense of second-degree manslaughter (requiring wantonness) or reckless homicide (recklessness) instead. *See* 2 Wayne R. LaFave, SUBSTANTIVE CRIMINAL LAW § 15.3(a) (3d ed. 2023).

As § 503.120(1) makes clear, imperfect self-defense does not *justify* a killing. Even if Jamison genuinely believed deadly force was necessary to defend himself from Williams, Jamison's conviction establishes that his belief was wanton as a matter of law. *See Hager*, 41 S.W.3d at 843 ("[T]he fact that the fatal conduct was committed under a wantonly held belief in the need therefor provides no defense to a charge of … second-degree manslaughter."). And, as explained, self-defense is "unavailable"— in such cases. Jamison's conviction conclusively established that his killing of Williams was unjustified and thus estops him from relitigating that issue in this civil case. *Cf. Stanley*, 2019 WL 4786053, at *13 ("Smith's reckless-homicide conviction establishes, as a matter of law, liability for Brandon's wrongful death.").

\* \* \*

Finally, Jamison argues that, at the least, he should be allowed to testify about the circumstances surrounding his plea. Response at 5. Since the justification of self-defense is unavailable to him for the reasons just discussed, why such testimony could be relevant is hard to imagine. Rather than anticipating those arguments, however, the Court agrees with the Plaintiffs that this argument is better suited to a question-specific objection or a pretrial motion. Reply (DN 71) at 5.

\* \* \* \*

The Court scheduled and held a remote hearing regarding this motion for partial summary judgment on October 7, 2024. Jamison, however, is no longer represented by counsel (he was during the briefing of the motion discussed above) and did not appear to argue the motion pro se. Magistrate Judge King had previously ordered Jamison to verify his address after he failed to appear at a different status conference, *see* DN 80—a directive Jamison either never received or ignored. Given

4

Jamison's apparent unavailability, the Court orders the Plaintiffs to attempt to confer with him and file a joint or separate status report regarding next steps, including any dispositive motions, no later than November 18, 2024.

## Conclusion

The Court grants the Plaintiffs' motion for partial summary judgment (DN 69).